MISSOURI, K. & T. RY. CO. OF TEXAS et al. v. GOLSON.†

(Court of Civil Appeals of Texas. Dec. 14, 1910. On Rehearing, Jan. 11, 1911.)

1. APPEAL AND ERROR (§ 1067*)—HARMLESS ERROR—FAILURE TO SUBMIT ISSUES.

In an action for breach of contract to furnish cars for the shipment of stock, where the evidence failed affirmatively to show that there was any contract for shipment to M. and showed that plaintiff tendered his stock for shipment to N., error in failing to submit the question whether the demand and contract were for cars to be used in shipping to M. was harmless, especially where it appeared that the freight rate to both points was the same, and that whether the contract was for shipment to M. or N. had nothing to do with the delay in furnishing cars.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4229; Dec. Dig. § 1067.*]

2. CARRIERS (§ 207*)—CARRIAGE OF STOCK—CONTRACT TO FURNISH CARS—ACTION FOR BREACH.

Where a shipper contracts to furnish cars for shipment of stock, he may recover for breach of the contract though the shipment was to be made beyond the limits of the state.

[Ed. Note.—For other cases, see Carriers, Dec. Dig. § 207.*]

3. CARRIERS (§ 229*)—CARRIAGE OF STOCK—INJURY DURING TRANSPORTATION—MEASURE OF DAMAGES.

The measure of damages for injuries to a shipment of cattle during transportation, whether they are for immediate market or to be held for feeding and fattening and thereafter to be sold on the market, is the difference between the market price in the condition in which they

were delivered and what their market price would have been at destination if proper care had been exercised during their shipment and in an action for such damages, evidence as to what a part of the cattle in question sold for three or four months after the time of shipment at a different market was inadmissible.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 963, 964; Dec. Dig. § 229.*]

### On Rehearing.

**4. WITNESSES (§ 406*)—CONTRADICTION—COMPETENCY OF EVIDENCE.**

In an action against carriers for breach of a contract to furnish cars for shipment of cattle, resulting in depreciation in their value, where plaintiff had testified on direct examination that the cattle had been loaded in cars at the rate of about 30 head to each car, and that such cattle, shipped from the shipping point at that time of the year to the state where his were shipped, usually got fat in about 90 days, but that his cattle did not get fat within that period, it was not error to exclude testimony sought to be elicited on cross-examination that about three or four months after the cattle were shipped, plaintiff had shipped part of them to market at different times in cars containing 23, 24, and 26 head each, as tending to disprove plaintiff's contention that his cattle had not fattened within 90 days, in the absence of evidence showing the size and character of the cars used in shipping the cattle over defendant's line as compared to those subsequently used in shipping the cattle to market, and of the relative compactness of the cattle in the cars in each of such shipments.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 1276–1279; Dec. Dig. § 406.*]

**5. APPEAL AND ERROR (§ 1048*)—HARMLESS ERROR—EXCLUSION OF EVIDENCE.**

Even if the exclusion of such evidence was technically erroneous, it was harmless, where there was no conflict in the evidence as to the appearance and condition of the cattle when they were shipped to market.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4140–4160; Dec. Dig. § 1048.*]

**6. EVIDENCE (§ 542*)—EXPERT TESTIMONY—PHYSICAL CONDITION OF CATTLE.**

In an action against carriers for breach of a contract to furnish cars for shipment of cattle, resulting in their reaching destination in a damaged condition, it was not error to exclude testimony of a stockman in the employ of one of the carriers, who had charge of the cattle and who had examined them a few days after their arrival at destination, as to whether there was anything in their physical condition that would indicate that they had received rough treatment in transportation, where he knew nothing about their condition prior to or at the time of their shipment, especially where he admitted that one could not, by judging of the appearance of cattle, tell much about whether they had had a hard trip or not.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2355; Dec. Dig. § 542.*]

**7. EVIDENCE (§ 539½*)—EXPERT TESTIMONY—RAILROADING.**

A witness accompanying one of the shipments having testified that while on a side track, they waited for five trains to pass them, it was not error to exclude testimony of an experienced railroad man that it would have been quicker to wait than to require the five trains to take the siding, where such witness was not with the side-tracked train and knew nothing of the relative position of the trains nor the location, capacity, or accessibility of the side track, and the hypothetical question submitted to him did not embrace such matters.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2350–2352; Dec. Dig. § 539½.*]

**8. EVIDENCE (§ 553*)—EXAMINATION—HYPOTHETICAL QUESTIONS—SUFFICIENCY.**

A hypothetical question propounded to an expert witness should embrace sufficient facts to enable him to give an intelligent answer.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2369–2374; Dec. Dig. § 553.*]

Appeal from District Court, Llano County; Clarence Martin, Judge.

Action by O. F. Golson against the Missouri, Kansas & Texas Railway Company of Texas and others. Judgment for plaintiff, and defendants appeal. Affirmed on rehearing.

S. R. Fisher, J. H. Tallichet, S. W. Fisher, Baker, Botts, Parker & Garwood, and Fiset & McClendon, for appellants. J. H. McLean, for appellee.

RICE, J. Appellee, who was plaintiff below, brought this suit against the Houston & Texas Central Railroad Company, the Missouri, Kansas & Texas Railway Company of Texas, and the Missouri, Kansas & Texas Railway Company, for the recovery of damages alleged to have been sustained by him to four several shipments of cattle, forwarded during the month of April, 1907, from Llano, Tex., to Nelagony, Okl., over said lines of railway. It was alleged that, prior to the 12th day of March, 1907, he had purchased and under contract for delivery to him at Llano, between April 4th and 8th of said year, from various persons, about 2,062 head of steer cattle, with the intent of shipping the same to Nelagony, Okl., there to be pastured and fattened and thereafter placed upon the market; that he had arranged for taking care of half of said cattle until the 7th, and the remainder until the 10th of April thereafter, but no longer, and that on or about said 12th day of March, 1907, he fully informed the defendant Houston & Texas Central Railroad Company, through its station agent at Llano, of all the facts and circumstances above mentioned, and then and there made demand on said defendant for 63 cars in which to make said shipment from Llano, about one-half of such number to be furnished at Llano on the 7th and the remainder to be furnished at said place on the 10th of April, 1907, ready for loading said cattle; plaintiff being then and there able and offering to pay to said defendant the freight charges for the transportation thereof; that said agent refused to receive payment of such freight charges in advance, but then and there verbally contracted with plaintiff, in consideration of the future payment of such freight charges, to furnish plaintiff, to be used in the shipment of said cattle, the 63 cars to be ready for loading, one-half on the 7th and the remainder on

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

the 10th of April thereafter; that on the 6th of April plaintiff made further demand upon said defendant Houston & Texas Central Railroad Company, through its agent at Llano, for one additional car, to be furnished for loading at Llano on said 10th day of April, 1907; that the time intervening between said several demands for said cars and when they were to be furnished was a reasonable time within which to do so; that on said respective dates above mentioned plaintiff tendered said cattle for shipment, together with the freight charges thereon, in accordance with said contract, but said company failed to have said cars in readiness for said shipment; and, notwithstanding his continued, frequent, and urgent demands therefor, none of said cars were furnished until the 8th, 12th, and 15th days of April, upon which said respective dates the said Houston & Texas Central Railroad Company furnished a sufficient number of cars to transport said cattle, to wit, 20 cars on the 8th, 21 on the 12th, and 24 on the 15th, upon which said cattle were loaded and shipped out from Llano to Elgin over the Houston & Texas Central Railroad; thence via the Missouri, Kansas & Texas of Texas and the Missouri, Kansas & Texas Railway to Nelagony, Okl. The last two companies were alleged to be partners. The negligence as charged being the failure on the part of the Houston & Texas Central Company to furnish said cars at Llano, in accordance with its contract, together with the negligent operation of one of its engines while there, whereby a part of said cattle were stampeded and injured, as well as delay and rough handling in transit of said respective shipments on the part of all of said defendants, by reason of which four of said cattle died en route, three shortly after reaching their destination, and the balance thereof were injured and depreciated in value to the extent of $5 per head, aggregating the sum of $10,280. The defendant Houston & Texas Central Railroad Company answered by general demurrer, special exception, general denial, and by special plea to the effect that it did not contract to furnish for plaintiff's use any particular number of cars at any particular time or place, and that at the time plaintiff demanded said cars there was an unprecedented rush of business, for which defendant was under no obligation to provide; and also that said cattle were shipped by virtue of certain written contracts, which provided that it should not be responsible for any damage sustained by said cattle on account of any inherent vice, nor for any such occurring elsewhere than on its own line, and that if any injury was sustained thereto, it was by reason of their being vicious, weak, wild, and unruly, and that while said cattle were in its possession, no damages were occasioned on account of its negligence. The other two defendants answered by general demurrer, special exception, gen-

eral denial, and pleaded specially that said cattle were shipped under written contracts, which provided, among other things, as a condition precedent to plaintiff's right to recover, that he should give defendants notice in writing of his claim for damages to said cattle within a certain period, and that no such notice was in fact given to them by plaintiff. There was a supplemental petition on behalf of plaintiff, urging various exceptions and also containing general and special denials, as well as affirmative defenses to matters set forth in said answers, but we deem a fuller statement thereof unnecessary. A jury trial resulted in a verdict and judgment against the Houston & Texas Central Railroad Company in the sum of $500, with interest, and against the other two defendants in the sum of $1,500, with interest, from which this appeal is prosecuted.

The charge of the court permitted a recovery on the part of the plaintiff against the Houston & Texas Central Railroad Company, provided the jury believed that there was a contract between plaintiff and said defendant for cars to be furnished at Llano on the dates alleged, and that there was a breach thereof by said defendant. This charge is challenged by several assignments, on the ground that since the evidence showed that the contract was for cars to be used in shipping to Meyers, Okl., and that since plaintiff tendered his cattle for shipment to Nelagony, that the court erred in assuming therein that the alleged contract was for cars to Nelagony. In the first place, we do not agree with appellants that said charge contained any such assumption that the contract was for cars to be used in a shipment to Nelagony, since it made no mention thereof; but if there was any error at all in failing to submit as an issue to the jury the question whether the demand and contract was for cars to be used in shipping to Meyers, then we think the same is harmless, because the evidence failed to affirmatively show that there was any contract for shipment to Meyers. It is true that the agent stated that he thought the original contract was for Meyers, yet he admitted that he may have been mistaken in this, and that the plaintiff at the time of the demand may have informed him that he wanted the cars for Nelagony. Besides this, it was admitted by defendant's agent at Llano that the freight rates to both points were the same, and that, irrespective of whether the shipment was to Meyers or Nelagony, this had nothing to do with the delay in furnishing said cars. As this is not a suit for the penalty denounced by statute for failure to furnish cars by said defendant Houston & Texas Central Railroad Company, but is based entirely upon a contract on the part of the company to furnish the same, and its failure to comply therewith, therefore there is no force in appellants' further contention that plaintiff was not entitled to recover because said shipment

was beyond the limits of the state, and we overrule the assignments presenting this question.

We overrule the fourth and fifth assignments of error, complaining of the eighth paragraph of the charge of the court, on the ground that the same submitted as against the Houston & Texas Central every allegation of negligence charged in the petition, because said charge does not, in fact, undertake to do so; but, on the contrary, only submits for the consideration of the jury such acts and omissions on the part of said company as shown by the evidence in the handling and transportation of said cattle as amounted to negligence which may have proximately resulted in damage to said cattle. We think the proper measure of damage was submitted, for which reason the eighth and ninth assignments, complaining of the court's charge in this respect, are overruled.

There was no error, we believe, on the part of the court in refusing to strike out the testimony of plaintiff Golson with reference to the value of said cattle at Nelagony, which had been admitted over objection of all of the appellants. We think his experience in the shipping and handling of cattle and the knowledge acquired therefrom was sufficient to qualify him to speak as to their value.

On the trial defendants offered to show that several hundred of these cattle were, during July and August of said year, sold by plaintiff upon the markets of Kansas City and St. Louis, and the price that was then obtained therefor. This testimony was excluded by the court, which is assigned as error. Appellants urgently insist that this testimony was pertinent, and admissible for two purposes: First, as showing the actual value of the cattle at the time and place of destination; and, second, as showing their true condition at the time and place of destination, as contradistinguished from their apparent condition immediately upon arrival, and as contradictory of the testimony of plaintiff to the effect that said cattle were seriously injured and damaged upon their arrival—citing a number of cases in support of their contention, among them Gulf, Colorado & S. F. Ry. Co. v. Godair, 3 Tex. Civ. App. 514, 22 S. W. 777; Pac. Express Co. v. Lothrop, 20 Tex. Civ. App. 339, 49 S. W. 898; Atchison, Topeka & S. F. Ry. Co. v. Veale, 39 Tex. Civ. App. 37, 87 S. W. 203; Railway v. Jackson, 99 Tex. 343, 89 S. W. 968; Ft. Worth & R. G. Ry. Co. v. Word, 111 S. W. 754, and Galveston, Houston & San Antonio Ry. Co. v. Powers, 117 S. W. 461. We have carefully examined each of said cases and, in our judgment, they fail to sustain appellants' contention. We think the general rule upon the subject of the measure of damages to a shipment of cattle, whether the same are for immediate market or to be held for feeding and fattening and thereafter sold upon the market, is the difference between their market price in the condition in which they were delivered, and what their market price would have been at the point of destination, if proper care and diligence had been exercised during their shipment. See International & G. N. R. R. Co. v. Young et al., 72 S. W. 68; San Antonio & A. P. Ry. Co. v. Wright, 20 Tex. Civ. App. 136, 49 S. W. 147.

In discussing this subject, Mr. Elliott, in his work on Railroads, vol. 4, § 1734, says: "It is well settled that these values are to be taken at the point of destination." Of course, appellant had the right to show that the cattle in question, upon their arrival, were not injured to the extent and degree asserted by plaintiff; and any evidence showing or tending to show the real condition of said cattle at the point of destination, as well as their value, was legitimate for this purpose; but we fail to perceive how the abstract statement as to what a part of said cattle may have sold for three or four months thereafter at a distant market, could have any tendency toward proving their condition, or value at the time of their arrival at Nelagony. If appellants had offered to show, or could have shown, that the same kind, grade, and class of cattle as here involved had been shipped from the Llano section, without injury, to said point about the same time, and that after having been pastured for a similar period as these were, at or near Nelagony, brought in the market certain amounts, and that plaintiff's cattle were sold at or about the same time for a similar or greater amount, then we could see that such evidence would have a tendency to show that plaintiff's cattle were probably not injured, as claimed; but, on the contrary, that the injuries received during their shipment were slight, from which no serious results followed. However, no such evidence was offered, and the mere abstract statement that parts of said cattle were sold and brought certain amounts several months after their arrival at Nelagony, in the markets mentioned, was inadmissible, in our judgment, for any purpose. We therefore overrule each and all of the assignments presenting this question.

Appellants' sixteenth assignment complains of the action of the court in excluding the testimony set forth in their bill of exception No. 5, which recites that after the plaintiff Golson had testified, on direct examination, that the cattle involved herein were shipped out of Llano for Nelagony, Okl., on the several dates in April as stated, being loaded in cars at the rate of about 32 head to each car, and that such cattle shipped from Llano at that time of the year to Oklahoma usually got fat in about 90 days, but that his cattle did not get fat within that period, defendants, on cross-examination, offered to prove by said witness that on July 15, 1907, he shipped to market at Kansas City 138 head of the cattle involved herein, and at said

time said cattle were loaded 23 head to the car, and that on or about July 29, 1907, he shipped to market at East St. Louis, Ill., 236 head of said cattle, and that the same were loaded 26 head to the car, and that on or about the 7th of August, 1907, he shipped to market at Kansas City, Mo., 258 head of said cattle, and that the same were loaded 24 head to the car, to which evidence the plaintiff then and there objected on the ground that the same was incompetent and immaterial, and had no tendency to throw light on the issues in this case, which objections were sustained by the court and defendants were prevented from introducing the same. In this ruling, we think the court erred. This evidence, in our judgment, was admissible as a circumstance tending to disprove plaintiff's contention that his cattle had not fattened within 90 days, as others had done, and was entitled to go to the jury for what it may have been worth.

While the witness Reilly, an experienced stockman, was testifying on direct examination in behalf of defendant, and after it was shown that he had charge of all these cattle, and that he had examined them in a few days after their arrival at Nelagony, the defendants all propounded to said witness the following question: "Was there anything in the physical condition that you saw in said cattle at said time, when you examined them, that would indicate that they had received any rough treatment while in transportation?" Plaintiff objected to said question and any answer which the witness might make thereto on the ground that the same was incompetent, irrelevant, and immaterial to any issue in this case, which objection was sustained by the court, and said witness was not permitted to answer said question. The answer of said witness to said question, if allowed to testify, would have been that he saw "nothing." We think this evidence was both relevant and material, and therefore the court erred in its exclusion.

A witness for plaintiff accompanying one of the shipments having testified that while on a side track they waited for five trains to pass them, the defendant offered to show by an experienced railroad man that it would have been quicker to thus wait, than to require the five trains to take the siding. We think this evidence was admissible, and the court erred in excluding it.

The other errors assigned, after due consideration, are regarded as not well taken; but, on account of the errors indicated, we thing the judgment of the court below should be reversed and the cause remanded for another trial, and it is so ordered.

Reversed and remanded.

## On Rehearing.

Appellee has filed herein his motion for rehearing, supported by an elaborate argument, insisting that the court erred in reversing and remanding the judgment in this cause.

We have duly considered each of the assignments so made, and have arrived at the conclusion that the same are correct and should be sustained.

We believe, in the absence of evidence showing the size and character of the cars used in shipping the cattle from Nelagony to market, as well as the size of those used in shipping from Llano to Nelagony, and also in the absence of evidence showing or tending to show the relative compactness of the cattle in the cars in each of said shipments, that we erred in holding that the court improperly excluded evidence as to the number of head of cattle loaded in each car when the same were shipped from Nelagony to market. We think, as suggested by appellee, that "a showing of the relative sizes of the cars in the two shipments, as well as the relative compactness of the shipment in each instance, was essential to show the relevancy of the proposed testimony, and that the onus of showing these additional facts necessary to the relevancy of the proposed testimony was upon the defendants." See 16 Cyc. 1110, 1112; Compton v. Young, 26 Tex. 649. Without these additional facts there was no predicate from which the jury might have deduced a logical inference. Even if it was technical error to exclude said evidence, still we are inclined to the belief that it was not such as would justify the court in a reversal of the judgment. As said by Judge Stayton in Lockett v. Schurenberg, 60 Tex. 614: "To reverse the judgment * * * on such grounds (the exclusion of evidence) this court should ordinarily be able to see not only that the court had erred, but that such error must, with reasonable certainty, have produced a substantial injury to the party in his cause. An abstract error upon a point of law applicable to the evidence is not enough. It should appear manifestly to have been a wrongful error in reference to the cause of action or defense." See McCarty v. Wood, 42 Tex. 39; M. P. Ry. Co. v. Edwards, 75 Tex. 336, 12 S. W. 853; Stonebraker v. Friar, 70 Tex. 204, 7 S. W. 799; Atchison, T. & S. F. Ry. Co. v. Lochlin, 87 Tex. 469, 470, 29 S. W. 469; Goodale v. Douglas, 5 Tex. Civ. App. 697, 24 S. W. 966; 16 Cyc. 1114.

Justice Brown, in Trinity County Lumber Co. v. Denham, 88 Tex. 206, 30 S. W. 857, discussing the point under consideration, says: "It is error to exclude from the jury testimony which is relevant, material, and admissible under the pleadings in a case on trial. Whether such error will require the reversal of a judgment depends upon the probable effect of such evidence upon the result of the trial, if it had been admitted. If the evidence in the case upon the issue on which the excluded evidence was offered be conflicting, and if it does not appear that the evidence, if admitted, could not properly have influenced the jury to render a different verdict, the exclusion of such evidence be-

comes material error, and the judgment must be reversed."

The late Chief Justice Fisher, applying this rule in the case of Ft. Worth & D. C. Ry. Co. v. Greathouse, 82 Tex. 108, 17 S. W. 834, held that the testimony admitted, though illegal, was not reversible error, because the same facts were testified to by other witnesses, and the evidence on the particular point was not conflicting.

So in the case at bar, if the proposed evidence was relevant, without showing the necessary additional facts (which we do not admit) as to the character and size of the cars and the compactness in loading, still, since there was no conflict in the evidence with reference to the appearance and condition of the cattle at the time they were shipped from Nelagony to market, it was harmless error, in our judgment, to exclude the evidence offered.

With reference to the exclusion of the testimony of the witness Reilly, we are inclined to believe that the proposed testimony offered by him was properly excluded, because it appeared that he did not know anything about the condition of the cattle prior to or at the time of their shipment from Llano. For aught that he knew, the cattle may have been in the condition mentioned by him when they left Llano. Besides this, he admitted during his examination that when cattle arrive at their destination "you cannot look at them and, by judging of their appearance, tell very much about whether they have had a hard trip or not." Furthermore, this witness had fully testified to all he knew with reference to the appearance and condition of the cattle upon their arrival. So that, if we consider the lack of knowledge on his part and the condition of his testimony just outlined, which is in conflict with the opinion sought to be elicited, it would appear that the exclusion of his opinion was not reversible error.

We likewise think we were in error in holding that the court below improperly excluded the proposed testimony of the witness Lovelett, to the effect that, in his opinion, it would be quicker for a north-bound cattle train to take the siding for five south-bound freight trains, instead of having the five south-bound freight trains take the siding for the north-bound cattle train, because it will be recalled that this witness was not with the train that was side-tracked for the five south-bound freights, and knew nothing of the relative position of said trains, nor the location, capacity, or accessibility of the side tracks, and the hypothetical question submitted to him did not embrace any of these matters, without which we are inclined to believe his opinion was not admissible. A hypothetical question should embrace sufficient facts to enable the witness to give an intelligent answer.

See 17 Cyc. 242 et seq.; Cooper v. State, 23 Tex. 335 et seq.

Believing, therefore, that we erred, for the reasons indicated in reversing the judgment of the court below, the motion for rehearing will be granted, our former judgment set aside, and the judgment of the court below affirmed.